21-11-271, why don't you wait until people get settled before you get started. Mr. Talber, I presume. Alright, you may proceed. Thank you, Your Honor. Good afternoon, Andrew Talber on behalf of the Federation of Southern Cooperatives. The question in this case is whether the Secretary of Agriculture, the head of an agency that has long discriminated and to this day continues to discriminate against black farmers, is an adequate representative of black farmers. He is not. Indeed, I have not located and the parties have not identified any case holding that a discriminating entity is an adequate representative of those victimized by its discrimination. That, however, is in effect what the district court held below. Counsel, you attached some affidavits to the motion to intervene. You correct me. I think that's where these affidavits are. They're looked at, maybe six of them. Yes. And they make various allegations and it seems to me not many of them are supportive of what you're saying now, either because they don't really, they're speculative about whether there's any discrimination involved or maybe one or two examples, maybe there's a little bit there. Obviously, what your friends on the other side are arguing is that this isn't a matter of us ignoring relatively recent discrimination, but maybe they don't identify the same events that you do. I'm still trying to get my mind around, are we, I mean, this doesn't look that much different from some of the other cases that did not allow intervention because of sufficient representation by the relevant party. Is that sort of the core of your argument that they are, at least your allegations are going to be that there's current discrimination by the USDA? Is that, I don't want, I'm sure you don't want to be boxed in, but would you say that is the crux of your argument? Yes, Your Honor, I'm happy to be boxed in. How about be all, end all? I'm sorry, be all, end all? That's all right. Go ahead. So, Your Honor, several, there are several things packed into that question, so let me try to unpack them. First, in terms of evidence that we have already presented of ongoing discrimination by the FSA or USDA can be found in those declarations, and I would point, Your Honor, probably the best example is to Mr. Cannon's declaration, which can be found at pages 2, 3, 3, 4 to 2, 3, 3, 5, paragraphs, I believe it is 9 through 11, if I'm not mistaken, in which Mr. Cannon describes ongoing discrimination that he has suffered within the past year. These declarations were submitted in 2021, and he describes discrimination that he encountered in 2021, being denied access to the FSA offices, whereas white farmers were granted access to that office, and, moreover, difficulty in obtaining his loan as a result of additional requirements imposed upon him, which led to a delay in the disbursement of his loan. The second thing I'd point out, Your Honor, is, of course, this evidence that we presented was presented in the context of our motion to intervene. It is certainly not the totality of the evidence that we would present were we allowed to intervene. We would not only— You would get to do discovery if you were a party. Yes. Is that the most critical thing you get as a party that you don't get as an amicus? It is, Your Honor, because we would want to present evidence of current discrimination that the government is unwilling to present. We would, as I say, try to bolster the declarations that we have submitted. Moreover, we want to conduct an expert statistical analysis of the FSA's loan data to demonstrate the ongoing discrimination. So we do want to do that. Moreover, we would like the opportunity to challenge the plaintiff's evidence that they intend to produce. So it's not just conducting discovery ourselves, but then being able to examine their expert. And the government has waived that opportunity. The government has waived the opportunity to do so. Can I ask a couple of questions? Yes, of course. I'll ask a few. You can scribble them down and answer. Are you making any real argument of reversible error on 24B? And if you are, is it that the district court clearly erred saying there were identical interests? Or is it the district court had the wrong legal test? I would say the court erred in saying that there are identical interests here. So a clear error factor. Yes, Your Honor. Okay. Can you reconcile Hopwood versus Brumfield? Yes, absolutely. And the cynic in me thinks we allow voices that we favor and we don't allow voices we don't like. But you won't say that. So how do you reconcile the two? In Hopwood, unlike here, the would-be interveners wanted – and this is the court's word – to present more evidence of the discrimination that they were alleging. Here, we want to present distinct and different evidence, not more of the same evidence, but different evidence. The government will not put on evidence of current discrimination. We will. That's a distinction. On your rule, would victims' voices always require intervention? When someone's been victimized. Can you think of – I'm looking for a limiting principle. You know, I probably could imagine situations – I don't think it's an automatic – I don't think. Because, you know, anytime the government's defending the constitutionality of a program they administer, would it then be that the beneficiary would always get a voice at the table? I don't think so. The test of this court, Your Honor, is when there are – is there real divergence of interest that is germane to the litigation. There may well be instances where there is no – where there's a difference of interest, but it's not germane to the litigation. Here, again, unlike Hopwood, we have – Germane to the litigation. Yes, Your Honor. Okay, and then I'll stop asking because I don't want to ask too many. But I suspect you're aware of the Supreme Court's hearing burger on the 21st of this month. Yes, Your Honor. Do we almost have to hold this case for that? And here's why. It is – it relates to the standard review, but it also relates to how distinct the party from the intervener movement would have to be. And I was reading the amicus briefs, retired judges, scholars, and they're saying especially when the Department of Justice is defending the constitutionality of a program, you have to worry about is it sort of procedural chaos to say everybody else gets to jump in the courtroom mix. So all those issues are at play in front of the Supreme Court. Well, I would urge this court not to hold the case pending the decision and – Burger. Burger. Because here things are proceeding in the district court. The discovery closed about a week and a half ago. Motions for summary judgment are due next week, and the replies then are due April 1st. So things will be proceeding in the district court, and if this court holds this case – Thanks. I've asked a lot of your questions. Go ahead. Your Honor, with a distinction to Hoppe, I just want to complete that there. Not only are we presenting different – qualitatively different and distinct evidence rather than simply more evidence of the same, we have concretely identified the divergence of interest between the federation and the secretary, unlike the would-be interveners. Confirmed by the district judge at the hearing, right? There was no hearing on intervention here, Your Honor. It was decided on the papers. Okay. Why am I thinking at some point the government did confirm that it wouldn't be – didn't – The district court below construed a statement by the government during the hearing on the preliminary injunction. That's what I'm – Yeah. But in the preliminary injunction, the government did say we don't perceive present current discrimination. I'll let my colleague quibble with the characterizations. I know they quibble with the district court's characterization. But the fact is, in the government's briefing to this court, the government has clearly stated that the secretary will defend Section 1005 on the basis of past discrimination and the lingering effects of that discrimination. And it is clear that they will not be presenting evidence of current discrimination. And that is absolutely essential. The district court, Middle District of Florida, which is also considering the constitutionality of the provision in the Wynn v. Vilsack case, in granting the preliminary injunction sought by the plaintiffs there, described as crucial – granted the preliminary injunction in part because the government had failed to present evidence of current discrimination. And that failure, the district court said, was crucial because evidence of current discrimination in that court's view is vital to upholding the constitutionality of Section 1005 because in that court's view, the many remedial steps that Congress and the department have taken subsequent to the initial determination – So what specifically is the current discrimination as opposed to the past? Well, it's actually the same, Your Honor. It's ongoing discrimination. I wouldn't say anything has changed – Ongoing discrimination? Tell me specifically. So if two people who are otherwise identical walk in and one is color A and one is color B, color B is going to get what they need and color A is not? Essentially. The declarations that we have introduced show that the county committees through which the FSA administers these loans are overwhelmingly white, not diverse, reflecting the population, and that these committees are comprised of competing farmers with our members, so they have a clear vested interest in benefiting themselves and not benefiting our members. But is that racial discrimination or just personal discrimination? Well, it's racial. In the declaration of Mr. Cannon, for example, that I cited to the court earlier, he described a situation just last year where because of the COVID restrictions, he was told that he may not enter the FSA office, whereas he observed white farmers in that office. Moreover, he describes how when he submits his application for a loan, he is forced to go back and provide more information and more information, whereas the white farmers in the region are not. And the critical part of that is then the funds get dispersed earlier to the white farmers. No, I mean, I understand the concept and I'm very much concerned about that, but is this viewed as explicit bias or implicit bias? I would say this is explicit bias, Your Honor. But, again, we have not presented— Does that matter? Does it matter whether it's explicit or implicit? I think it's certainly easier to carry the day if it's explicit, but I'm not saying that that is necessary, Your Honor. Now, I know the government makes the argument that the presentation of evidence of current discrimination or the decision whether to present evidence of current discrimination is merely a tactical decision and that it's merely a tactical decision. And that's simply not the case, Your Honor. There is no legitimate reason not to present evidence of current discrimination in this case. The Middle District of Florida has said such evidence is crucial for upholding the constitutionality. The district court in this very case, when granting the preliminary injunction, pointed to the government's failure to present evidence of current discrimination in its explanation of why it was granting the preliminary injunction. So it's clear that this evidence of current discrimination is crucial to sustaining the constitutionality of Section 1005, yet the government will not present it. Let me ask you this. If the Secretary of Agriculture, if it was proven that his team was explicitly committing bias against people based on their race, do you think he'd get fired by the President? I mean, does he have that concern? I guess I'm just asking, does he have a personal concern? No, he's here in his representative capacity. No, but I mean, yes, I understand that we're not going to fire him, but I'm just saying if it came out, you know, things show up on the Internet. Who knew? And so if it did, would that be something that he's personally concerned about? I would imagine so, but here the discrimination that we are concerned about is not discrimination by Mr. Vilsack personally. No, I understand, but his team, if he's not, I mean— Clearly the department has a very strong interest in avoiding the potential liability that would flow from an admission of ongoing discrimination. But, I mean, if he's not the one discriminating and he's opposed to discrimination and he's working against it, why wouldn't he be on your side? Well, we see already in this case that he has not been vigorously pursuing the defense of Section 1005. He's been fighting with one hand tied behind his back because given his institutional interest of avoiding potential liability and reputational harm, he simply will not present this crucial evidence of current discrimination. What was the—in the hearing, how far up did the government's evidence go? When was the Lewis report? I believe the most recent government evidence was through 2017, Your Honor, though the government obviously can correct me if I'm mistaken there. I think it's through 2017, whereas the evidence that we have provided comes up right to the present day— Pandemic evidence. —through 2021, which was the present day when the declarations were signed. Let me ask you about these presumptions and specifically on whether the current representation is adequate and what weight to give to the fact that the relevant representation is by a governmental agency. You make the argument there's a little bit of case law on it, the difference between a little old agency and the sovereign interest itself. I'm not sure I really follow that. The case law has some language like that. Explain to me why sovereign interest is relevant and how does it apply here? Well, this court has said that when the government is representing a sovereign interest, this presumption of governmental adequacy, government representation applies. Yeah, but that's a—one of the places that appears is at the Intergy Gulf case, and it's in a footnote citing Hopwood, and Hopwood doesn't say that. Hopwood used the word sovereign, but it's talking in more general terms about just governmental agencies and for whatever reason, a series of cases, not starting with Intergy, picked up on this sovereign interest. Explain to me what sovereign interest would mean and why that would be the key, as opposed to the distinction of when government's the employer. Okay, that may be different if you're suing over the nature of employment. How does sovereign interest actually make a difference as opposed to just the federal government representing the interests of the people of the country? Well, Your Honor, I would suggest that here, as in the Edwards case, the case with the Houston Police Department, the government— So that's the employer. I'm sorry? So that was the defendant as the employer. No, exactly. So that's to me—I mean if you want to label that sovereign versus non-sovereign, okay, but that's doing a whole lot more work, it seems to me, than the word—you don't need sovereign to do that work. But here, Your Honor, the government, just like the defendant in Edwards where they were appearing as an employer, here the government is appearing as a lender. So it's not exercising its sovereign interest. It's appearing here as a lender, and the policy at issue is whether or not there will be debt relief on loans issued by FSA. And so, again, it's representing, just as in the Houston case, an interest that is not of the sovereign as such. It's not—I forget which case it was. It might well have been Edwards talking about—or maybe Edwards talking about the sovereign interest. It described it as when the government exercises its sovereign power to prescribe rules and laws that govern both civilly and criminally. But that's not what's going on in Section 1005. 1005 is talking about the internal debt relief policies. It's not trying to regulate individual practices outside the government. So for that reason, it's not sovereign interests that are at stake here. I see my time is expiring. Your Honors, and may it please the Court, Jack Starcher on behalf of the United States Department of Justice, or USDA. The district court here correctly— What division? Sorry? What division? Civil appellate. The district court here correctly denied the Federation's motion for intervention. As of right, this Court has recognized two separate presumptions in this area. Both of them apply here, and the Federation can overcome neither of those presumptions. I think the easiest path forward here is that this case is, I think, directly controlled by Hopwood. My colleagues' sort of distinctions between this case and that one— Isn't the energy that was just discussed, isn't that binding that when the government body is an agency, you don't get the government? So a few different ways that this Court could handle energy. First, that was very explicitly the district court's basis for denying this motion. What are you talking about? Sorry, the governmental presumption was very explicitly the district court's. Right, but what was very definitely the district court's way of analyzing? Right, and so— Keep going. The district court expressly relied on the governmental presumption. The district court in this case? In this case, yes. Sorry, I can see why that's confusing. And yet the Federation didn't make any argument in its opening brief to this Court that that presumption— Because it does seem foreclosed by the analysis and interest. No, and then I guess my second response is, so I think you could find it forfeited in this case, that argument that the governmental presumption doesn't apply. But if you were to reach the argument, if you read that footnote, as I think you noted, the footnote accurately summarizes and recites the legal standard given for whether the governmental presumption applies from Hopwood and Brunfeld. And both the articulation of the standard in that footnote in Entergy and in Hopwood all very expressly turn not on the identity of the defendant but on the nature of the interest at stake. I'll just look at it again. I thought they specifically said not when in agency. So that is the distinction that that footnote in Entergy draws between— Anyway, at a bigger level, I guess, it is hard for me to see how the government, whose client is the United States, has identical interests to people that are claiming that the government is presently discriminated against them. And I'll compound it. Am I right that the government has chosen not to appeal the injunction in Wisconsin, Florida, or here? Why isn't that proof right there of antagonistic interest? So a few responses on taking the last first on the decision not to appeal the various preliminary injunctions. The Federation here doesn't make any argument that that's the— But it sort of jumps out at you, right? They don't want their properties foreclosed and the government is not trying to disturb the— Well, but the government is very much continuing to litigate these cases and is filing summary judgment briefs defending this policy in district courts across the country. And so, again, there's no argument made here that the mere failure to appeal the preliminary injunction is itself the sort of clear, germane— You know my background, and maybe you don't. I come from criminal law, and victims always have a right to speak separately from the government in criminal sentencing. Right, but I think as your earlier question sort of alluded to and as this court observed in Edwards and as the district court observed here, in civil litigation in which the government, any government, is defending the legality of a governmental program, necessarily private parties who benefit from that program in every case can come in and identify the kinds of high-level differences that the Federation— That does worry me, but here those private parties have also stated something that in the hearing when I read it you said you would not present and you deny that there is current discrimination. So a few responses. I guess the first response is yes. I guess it's true that the government is not presenting evidence of current discrimination. I think as Judge Southwick's questions earlier sort of alluded to, the Federation presents that as a clear dichotomy between evidence of present discrimination on the one hand and evidence of continuing effects of ongoing, fast discrimination. But if you look at what's actually in the declarations and if you look at summary judgment briefs that the government has filed in other of these cases, including just last week, that distinction really isn't nearly so clear. The government just last week filed a summary judgment brief in which it cited disparate treatment, different outcomes that minority farmers experienced in an earlier round of COVID funding. So this is extremely recent in time stuff. Counselor, let me ask you this as a matter of legal analysis. Isn't it a much stronger case if current discrimination can be shown just sort of – maybe it's not the best label – this sort of affirmative action program that does indeed differentiate between races requires some pretty strong evidence to support it. And so if there is current discrimination, it's going to be easier to overturn a preliminary injunction, for example. So whether or not it's relevant, I think it certainly would be relevant. It's not just relevant. It seems to me it's particularly powerful, more so than just saying are there any continuing lingering effects of past discrimination. So I disagree that it's particularly strong in a case like this one. One of the many limitations that the government faces in defending any program under strict scrutiny, which everyone agrees is what this program is subject to, is that you're limited to the reasons given by the Congress that actually passed the statute. You can't sort of supplement in post hoc justifications for the racially discriminatory, racially conscious program. And here, if you look at what was before Congress, if you look at Congress' analysis in passing Section 1005, all of that made very clear that it wasn't trying to address current discrimination. It was focused on ongoing effects of past discrimination. And so if we were to point to evidence that Congress didn't rely on or to sort of point to current discrimination as the justification for this program, I suspect my friends on the other side, although I'm on the same side in this particular appeal, would come back and say that was not the purpose that Congress gave when it passed this statute. Did you have a hard time figuring out what table? A little bit, I did. It took more thinking than me. It does seem to me, I mean you're certainly very familiar with legislative history for this, but I'd be surprised if there's anything in legislative history that says we're not concerned if there's current discrimination. I think that's probably right. Maybe there's current discrimination now, but we're not factoring that in. We're only looking at lingering effects. Are you sure you're not trying to prove too much by this? Right, and I don't want to say that it's not relevant, certainly, and that it couldn't be relied on. I guess to back up one second, I do want to just make a pitch that all of this is foreclosed by Hopwood before we go too far down this rabbit hole. What about Judge Higginson's always insightful questions, which is it kind of depends on who the party is and whether you get to intervene or not, and it's hard to me to make Brumfield and Hopwood in some of these cases fit together. I mean Hopwood itself is saying, okay, it's not completely aligned, and there's maybe some additional arguments you would make, Hopwood, if you intervene, but that wasn't enough. Right, well, I think the cases do align really cleanly, and if you look at Hopwood on the one hand where you have what is effective, there were no different legal arguments, just as here, that the proposed interveners there were trying to make in Hopwood. You compare that to Edwards and Brumfield, and I think the way this court sort of put things in Texas. Texas is the aliens and the doctors. Exactly. They were. It was a concession that the government was making that was directly adverse to the aliens' interests in that case, and that would result in a holding that potentially, a standing holding, that would potentially give one of the parties there, Texas, the ability to not give those immigrants, those aliens, drivers licenses. But again, I think if you look at Brumfield and Edwards and Texas, in each of those cases there were, at step one, the interveners there identified differences in interest, but then importantly there was a second requirement, which is that you identify both a difference in interest and a way that those differences are going to manifest in a real meaningful sense. In Edwards it was that the police unions there actually wanted no race-conscious remedy, and in Brumfield the parents there wanted to make a separate jurisdictional defense that the state had totally declined to make. And then you look at Hopwood on the other end of things, and just as in this case, those in Hopwood and here, the differences are really differences in kinds of evidence, of decisions. Yeah, but he's made the point, I mean, we could sit here, if we were at the same firm, we'd sit around the table and say, should we call witness A or witness B, and you're the senior partner, you say, let's just do witness A, and I'm the associate and I think we should call witness B. That's kind of that subject. But here, very expressly, you all are not calling anybody that says, currently people of a certain race are being discriminated against based on their race in this context, and they want to put on that evidence. Isn't that a distinction? So a few responses. First, again, I think that was the same point earlier of whether or not that's really going to carry the day or be enough in the context of a strict scrutiny case where Congress didn't rely on that kind of evidence or didn't say it was remedying ongoing current discrimination. Well, Congress didn't say, let's have current discrimination, but we'll work on the past. Sure. I mean, come on. I'll make one other sort of, if you look at the briefing in Hopwood in particular, I understand that the opinion itself is a little unclear on this, but all exactly these arguments, exactly these arguments about differences between current discrimination and past discrimination and ongoing effects were made by the proposed intervener in Hopwood. They made exactly this pitch. This is from the opening brief of the intervener in Hopwood. They said, clearly the standard issue there about discrimination pits the diverse legal interests of defendants, including their interest in avoiding future litigation by third parties for direct discrimination against those of the affected African-Americans in preserving the affirmative anti-discrimination remedies. If you look at both the opening and reply brief in Hopwood, exactly these arguments about this exact divergence between beneficiaries of an affirmative action program on the one hand and interests of the government, particularly the interest in being worried about being sued. The consequence here matters a lot more than just the Americans, whatever, American rescue plan. Right. So it's the same question I asked opponent. You're not asking us to hold this for Berger? Seems like the issue here is to when the government's defending the constitutionality of its programs and beneficiaries say we want to be at the table would have a big impact what we write. And I thought some of those issues are before the Supreme Court. So I don't think the questions presented actually raise – I agree. I haven't looked at all the amicus filings in that case. I know that some of this does come up in some of the amicus filings. But the questions presented, as I recall reading the petition, not that recently, but was not about this. Really the focus was – What difference is given to the district court's ruling? Right. That it's a standard – That's what we're doing here, isn't it? Well, no. We agree that this is an intervention as of right and that it's a de novo – intervention as of right is de novo review. So under this court's precedent at least and we don't – Counsel, let's say we make the mistake and allow intervention. A mistake from your viewpoint. I'm very concerned and maybe Berger to some extent will answer some of this. How would you write that? What is a principle, maybe the way to put it, or analytical way to say, these people but not necessarily everyone who has a claim as a beneficiary of the program, how would you distinguish this from a more general effort? So this is if you were writing an opinion against us, how would I like it to be written? That's what I mean by mistake. We made the mistake to rule against you. Help us. What's the least amount of damage from your perspective? You argue this in the next circuit. It's hard to – I mean I think that opinion would have to overturn Hopwood, and I think the most narrow way possible would be to – and I don't know. It's hard. I can't come up with anything on the spot. They have additional evidence they want to put in that they say they're arguing you won't put in. Which is true in every case where the government – in really any case where the government is defending any such evidence. That's the thing that seems to me that that's very often going to be the case, and they're saying it's a different context for it, past versus present, but that still comes down to evidence. I'm hitting you cold at the end of your time on the other side's problem, but nonetheless. Up to you. I can respond to that or I can sit down. Why don't you have a seat? We'll hear what your somewhat friend, sometimes friend, has to say. Thank you very much. May it please the Court. Gene Hamilton on behalf of the plaintiffs' appellees, Sid Miller and Paul. Our position is laid out in our brief. It's simply that the – I'd love to hear just right away the answer. What's the limiting principle if you don't prevail? What's the limiting principle? I'm not aware of a limiting principle that would apply based on the facts of this case. In particular, this case is emblematic of what could happen, as you rightly raised, Judge Higginson, that in every single one of these cases where the federal government is charged with defending the constitutionality of a statute, the implementation of a statute, there is always going to be somebody, some other party, who is going to be affected by the lack of implementation. The government's got a lot of race-conscious programs, and they have to be very careful what they do and what they present. But the victims here who don't want their farms foreclosed, they're definitely going to argue hard in this case. Well, they most certainly – the government most certainly will be careful, and it has to be careful. And the problem here is that what we're hearing a lot of are things about present discrimination. As my colleague rightly pointed out, not all of those things were proper even before the Congress when it considered passing Section 1005 of the American Rescue Plan Act. There's no evidence that this type of present discrimination was established in the record sufficient, the same way that the proposed interveners are trying to get into the record before Congress when it was passing this bill. So they could come through with all kinds of evidence post hoc after the United States Congress passed legislation, and they can try to introduce all kinds of things. Isn't it a little shocking that if there was just absolutely clear evidence of current discrimination that we'd say, yeah, but Congress wasn't trying to address that so well, we'll just have to find it unconstitutional? I mean, I just think that's lacking practicality in analyzing this. Well, Judge Haynes, that's an interesting point. I would say that that might be grounds for an independent lawsuit brought by individuals or organizations like the Federation. They could bring their own claims. We've seen these types of claims brought in the past. The Pigford Settlement is a perfect example of examples where people who were victimized by past discrimination and present discrimination bring claims against the United States Department of Agriculture. That's the routine way that these things are settled. Don't you think they'd rather be on this? I mean, isn't it a little surprising that the agriculture didn't want their help if they thought that there was past, present, and future discrimination going on? Well, Judge, my understanding of my colleagues' position was that they opposed intervention as of right, of course, because I think that they would take issue with the notion that they are not able to adequately represent the interests of the individual. Yeah, but not permissive. But then on appeal, they're contesting permissive, so it's a little hard to follow. Right. On permissive, below they said that they would not oppose intervention with certain types of safeguards, which basically, when you consider those safeguards, amounts to what they're currently getting from the court, which is participation as an amicus. Nothing stops the proposed interveners from submitting the evidence that they want as an amicus. Yes, there is. And an amicus can file a brief, but they don't get to get up and call witnesses or take discovery, unless the world's really changed a lot since I was down there. Well, Judge, that's true that they won't get to participate in discovery, but if there's evidence that they have now, they can present that. As my colleague or a way back to you. They can call a witness at the trial? No, Judge, they cannot call a witness. Okay, so that's my point. That's my point. That's huge. That's the Dears Arena Party and everybody else. You get to do discovery and you get to call witnesses. Isn't that a difference? Well, it is. How would you like to not be able to call any witnesses in this case or conduct any discovery? It most certainly is a difference. The problem is that what the interveners are proposing is squarely foreclosed by this circuit's precedent about intervention. We have the two presumptions that my colleague addressed. There's a presumption because this is a governmental entity that's involved in defending this. The defense of the constitutionality of the use of a statute is not quintessentially a sovereign interest. I don't know what is. This is not an employment litigation dispute as we had in the Brumfield case. What about the argument that it's a loaner dispute? You're essentially a bank instead of the government. What we are challenging in this case is the secretary's implementation of the loan forgiveness program itself. We're not addressing anything else. What we are addressing is the secretary's implementation of the statute itself. Is it a little bit odd that the lead plaintiff is himself a secretary of agriculture? I mean it's a different title in Texas. I mean what if there was such a similar statute in Texas? Would he be able to defend it? Well, Judge, our client, Mr. Miller, is appearing in this case in his personal capacity. Oh, I understand that. So he's in his personal capacity. He has a right to do that. I'm not saying he doesn't. But let's say that then there was a similar statute in Texas and there was a suit in Texas. Would he be able to defend it? In his capacity as the head of the cabinet agency, I suppose I would have to answer that specific question. So it doesn't matter what that person is? It doesn't matter who that person is? I mean, in other words, the notion that somebody will defend their own discrimination, it's a little bit, at that level, secretary in Texas, secretary of the U.S., it's a little hard for me to wrap my head around. Well, Judge, I think I understand the court's position or your position, but what our position is is that the district court did not err by concluding that both of the presumptions that apply under this Fifth Circuit's precedent applied to the facts of this case and that also the permissive intervention was not warranted for largely many of the same reasons. And so what we are looking at here, permissive is obviously reviewed for – would only be for an abuse of discretion. We've heard nothing that would get to an abuse of discretion. We've heard a difference of opinion. But the district court said he was not because their interests are identical. Isn't that clear error? Isn't that an abuse of discretion right there? Because a victim would never have an identical interest to the oppressor. Well, Judge, I think it really depends on the facts of the case and the specifics of the program. The specifics of this program – we are challenging the secretary's denial of the benefits of this program to individuals who do not qualify as socially disadvantaged farmers or ranchers. That is what we are challenging. This is not about victims or about anything else. What we are trying to challenge in this case is the government from discriminating against one group of American citizens based on the color of their skin by administering benefits that are only available to people of a different skin color. Right, and they want that favorable treatment. The government – Not the government. The movement. The government – No, not the government. The movement says we're the ones that should be given favorable treatment. The law says we're entitled to it. Correct. The proposed interveners, they do want that favorable treatment. That is correct. How is that identical in interest to the government? Because they share the same ultimate outcome interest in the case. If I could ask, you know, you two – I've just asked each counsel. You don't see any reason for us to hold this for Byrne? I don't. Thank you. Can you explain why you didn't cite Hopwood in your opening brief when that was the whole thing that the district court relied on? We talked about the principles of what we have to prove. I apologize for not having cited the case in particular. The government standing here conceded that evidence of current discrimination is relevant to the issue before the district court. There's no question that evidence of current discrimination is relevant, and there's no question that the government will not present it. Is it in the record where the bulk of the loans that are being sought to be forgiven lie? Are they in the last couple years? Is this a lot of pandemic loans? I'm not aware of it in the record, at least at the – So you don't know chronologically? Not chronologically, no. I know from our declarations that Mr. Blanding, the head of the federation, submitted that there are about – we estimate there are about 500 members of the federation who are affected by Section 1005 or would be eligible for relief under it. And does it give you any consolation that the district court, as to 24B, said I'm denying it at this time? No. Which I thought maybe would suggest that if you said, hey, here's evidence of current discrimination, the court might revisit its 24B denial. I'm not comforted by that, Your Honor, because, as mentioned when I was up here earlier, things are proceeding quickly in the district court. And if we're not given the opportunity to intervene and intervene soon, we will have lost the opportunity to develop the record,  So should we reverse the motion panel's decision not to stay the district court proceeding and stay it while we decide this? I don't want to create extra work for the court. I think it would be easier to issue a quick decision. But if this court thought it would take a long time to issue a decision, then yes, I would appreciate a revisiting of that. Let me ask you about the distinction between your interest and the federal government. Take a case like Texas on DAPA, Texas versus U.S. There are so many Texas cases against U.S. these days. This is one having to do with immigration a few years back. You're familiar? Yes. No mandates on vaccines. The government's interest in DAPA is securing an expansive interpretation of executive authority, efficiently enforcing immigration laws, et cetera, et cetera. The plaintiffs, immigrants, want to retain custody of their citizenship or their citizen status. It seems to me there's much less distinction between your interest and the interest of the Department of Agriculture, U.S. Department of Agriculture in this case. You both want exactly the same thing, which is to uphold based on both lingering effects of past discrimination and any current discrimination that comes up. You want the 1005 to be preserved and to be allowed to overcome the arguments of the pseudo friend at that table of the Department of Justice. That seems to me to be a much more aligned defense, and the only real question is what evidence you put in and what else the evidence that you put in isn't going to result in anything else. At best, it's just going to make it a little easier to uphold this program, the statute. In Texas, the DAPA case, both the intervenors and the government were interested in defending the program. The difference there was this additional interest of the would-be intervenors in driver's licenses and the like. Here, of course the government is trying to defend them. Well, your individual plaintiffs, the people you represent, are not going to get more or less relief in this case. Their individual loans are not going to be affected. The issue is whether 1005 is going to stand or not stand, right? Yes, and the government is failing to put in what – So it is evidence. It's not – It's not only evidence. Nobody has a different result, and it's not even objective. It's a difference of opinion about what is the best way to get to that result. Respectfully, Your Honor, I would disagree because there is no legitimate reason, no strategic reason, no tactical reason, to not present this highly relevant evidence. The only reason the government is not presenting this crucial evidence is because it wants to avoid potential liability and the reputational harm that would be associated with a finding of ongoing discrimination. The plaintiff's side – Well, and your clients will be affected by the outcome in this case. If we affirm and the district court grants the permanent injunction, then your clients are going to be foreclosed. Oh, absolutely. The bulk of them, maybe not all, but that's the point, right? They're trying to avoid foreclosure of their farms. That seems like a pretty big influence. Oh, absolutely, Your Honor. And I think it's very interesting what plaintiffs said here. They came up and said that we, the Federation, could bring separate claims based on current discrimination. That's precisely the divergence of interest between the Federation and the Secretary. The Secretary wants to avoid liability, and we don't care about that. We want to defend Section 1005 in the fullest way possible. And the court in the Middle District in Florida, the district court in this case, both pointed to evidence of ongoing discrimination as important evidence that the government has not presented. It has not presented it because of its divergent interest from that of the Federation. Well, let me make sure this looks changed. Judge Haynes, I think I understand your point, which is not what I'm about to ask, but I want to make sure this isn't your point. If you're allowed to intervene, none of your individual class members, intervener class or whatever, is going to get any specific relief dealing with individual discrimination against themselves. They're seeking to uphold 1005 against this challenge. There's not going to be individual relief for intervener one, intervener two. Is this program going to stand or is it not going to stand? Through which they then get relief. Well, as a result of this still being a program. Yes, sir. All right. Thank you. Thank you. Is that everybody? Have I lost track? We will take a brief recess.